In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2433

KENNETH BOURBON,

Plaintiff-Appellant,

v.

KMART CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97 C 182--William D. Stiehl, Judge.

Submitted September 23, 1999--Decided August 4, 2000

Before POSNER, MANION and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.  Kenneth Bourbon sued his employer, Kmart Corporation, under Illinois law for retaliatory discharge, claiming Kmart fired him after he complained that his supervisor was engaged in dishonest and unethical behavior towards customers. The district court granted summary judgment in favor of Kmart because Illinois law allows suits for retaliatory discharge only under very limited circumstances, and because Bourbon could not show that Kmart's stated reason for the discharge was pretextual. We affirm.

I.

Bourbon began working as an automobile mechanic at the Wood River, Illinois Kmart in January 1995. Bourbon had worked at two other Kmart locations in 1994 without incident, but was fired from the Wood River store after only one month. According to Bourbon, he was terminated for reporting to the personnel department on two occasions that his supervisor had engaged in dishonest and unethical conduct towards customers. In particular, he reported that on one occasion, he accidentally broke a part on a customer's car, and offered to pay for a replacement part himself. Instead, his supervisor charged the customer for the extra repair, and used a junkyard part to effect the repair. On

another occasion, he reported that a customer was charged for an unnecessary replacement of a rack and pinion steering system when another mechanic misdiagnosed a problem. Both customers were eventually fully reimbursed by Kmart for these overcharges. Shortly after reporting these incidents, Bourbon's supervisor approached him to complain about his work performance and attitude. A little more than a month after Bourbon began his employment at the Wood River Kmart, he was terminated. Kmart, of course, contended that Bourbon was terminated for performance problems and not in retaliation for bringing questionable conduct to light.

Bourbon sued Kmart in Illinois state court and the case was removed to the United States District Court for the Southern District of Illinois. Bourbon's amended complaint in that court charged only that Kmart fired him in retaliation for reporting dishonest and unethical behavior by his supervisor. At the close of discovery, Kmart moved for summary judgment on the ground that the Illinois tort of retaliatory discharge did not protect employees who reported dishonest or unethical conduct but rather protected only employees who reported criminal conduct or who filed workers' compensation claims. In response, Bourbon pointed out that his supervisor's conduct constituted theft by deception under Illinois law, and therefore his reporting of that conduct came within the purview of the retaliatory discharge tort. The district court employed the McDonnell-Douglas burden shifting analysis to Bourbon's claim and found that Bourbon could not show that Kmart's legitimate, non-discriminatory reason for his termination was pretextual. See McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Alternatively, the district court found that even if Bourbon met the standard under McDonnell-Douglas, he could not show that his termination was in violation of clear public policy because he was reporting unethical, dishonest behavior and not criminal behavior when he was fired. The district court therefore granted summary judgment in favor of Kmart. Bourbon appeals.

II.

On appeal, Bourbon takes issue with the district court's application of McDonnell-Douglas to his claim for retaliation, arguing that burden shifting is appropriate only at trial or in the context of a motion for judgment notwithstanding the verdict. Bourbon also argues that there was a material dispute regarding the reason for his termination that could be resolved only at trial. Kmart, in turn, contends that Bourbon's termination does not come within the scope of the

retaliatory discharge tort because Bourbon claims only that he was fired for reporting unethical and dishonest conduct, and not for reporting any criminal activity. Kmart also asserts that Bourbon has no proof that he was performing satisfactorily at the time he was fired, and that he thus cannot make out a prima facie case under McDonnell-Douglas.

Illinois law allows claims for retaliatory discharge when an employee is terminated for filing a workers' compensation claim or because the employee has reported the employer's criminal conduct, either to law enforcement personnel or to the company itself. See Kelsay v. Motorola, Inc., 384 N.E.2d 353 (Ill. 1978) (recognizing for the first time the tort of retaliatory discharge when an employee was terminated for asserting rights under workers' compensation law); Palmateer v. International Harvester Co., 421 N.E.2d 876 (Ill. 1981) (expanding tort of retaliatory discharge to encompass terminations of employees who were fired because they reported employer's criminal conduct to law enforcement authorities); Petrick v. Monarch Printing Corp., 444 N.E.2d 588 (Ill. App. 1 Dist. 1982) (recognizing retaliatory discharge when employee reports criminal conduct to supervisors instead of law enforcement personnel); Belline v. K-Mart Corp., 940 F.2d 184, 187 (7th Cir. 1991) (applying tort of retaliatory discharge where an employee reports unlawful conduct to an employer). A valid claim for retaliatory discharge requires a showing that (1) an employee has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill. 1992). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." Id. No one disputes that Bourbon was discharged. Kmart disputes that he was discharged because he reported the customer overcharges, and also maintains that firing an employee for reporting unethical conduct falls outside the scope of the tort of retaliatory discharge.

The question of whether Bourbon's reporting of his supervisor's conduct is within the scope of the tort is a close question. The fact that Bourbon may have been wrong about whether the conduct was criminal is irrelevant under Illinois law. See Palmateer, 421 N.E.2d at 880; Belline, 940 F.2d at 188. The Illinois Supreme Court explained that persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of being wrongfully discharged. Palmateer, 421 N.E.2d at 880. Bourbon's initial

characterization of his supervisor's conduct as dishonest and unethical does not change the fact that, under Illinois law, Bourbon may have reasonably believed that the conduct also meets the definition of theft by deception. See 720 ILCS sec. 5/16-1. Bourbon's firing in retaliation for reporting that conduct would therefore likely meet the standard set forth in Palmateer as being in violation of a clear mandate of public policy, a policy against theft. Indeed, in Palmateer, the crime reported by the discharged employee was theft of a $2 screwdriver, and the court emphasized that it was not the magnitude of the crime that mattered but whether the General Assembly had decided that the crime should be resolved by resort to the criminal justice system. So too with the conduct Bourbon complained about here. The Illinois General Assembly has decided that depriving persons of their property by means of deception is a crime under Illinois law, and Bourbon's reporting of that conduct cannot be used as the reason for his termination even though he is otherwise an at-will employee. Nor is it determinative that Kmart eventually reimbursed these customers or that the Attorney General refused to pursue the matter. For the purposes of Illinois law, all that matters is that when Bourbon reported the conduct, he reasonably believed his supervisor was engaged in unlawful activity. Belline, 940 F.2d at 188.

Bourbon's case, however, fails on the element of causation, for he has insufficient evidence demonstrating a link between reporting his supervisor's conduct and his termination. As we mentioned above, the element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee. Hartlein, 601 N.E.2d at 728. Bourbon has presented no direct evidence that the reason for his termination was his reporting of the overcharges. No one admitted to him, for example, that he was being fired for that reason. Rather, Kmart claims that it terminated Bourbon's employment because he was an incompetent mechanic, and the company presented documentation of the problems it had with Bourbon's work. Bourbon's lack of direct evidence is not determinative, however. Illinois retaliatory discharge cases brought in federal court may be analyzed using the burden-shifting method presented in McDonnell-Douglas. See Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 767 (7th Cir. 1994). To establish a prima facie case using this method, Bourbon must show that he was in a protected class, that he was performing his job satisfactorily, that he was nevertheless the subject of a materially adverse employment action, and that others outside the class were

treated more favorably. Hiatt, 26 F.3d at 767-68. If Bourbon can establish his prima facie case, Kmart must then articulate a legitimate, non-discriminatory reason for his termination. The burden then shifts back to Bourbon to show that Kmart's proffered reason is nothing more than a pretext for unlawful discrimination. Id.

Bourbon's proof fails in at least two regards using this method. First, he has no evidence showing that he was performing his job to Kmart's satisfaction. All reports of his performance in his short stay at the Wood River Kmart were negative, detailing complaints by customers, co-workers and supervisors regarding Bourbon's work performance and attitude. That Bourbon had successfully, and briefly, worked at two other Kmart locations before coming to the Wood River store is irrelevant to his performance there. But even if we were able to find that there was at least a question as to his performance, he cannot show that his employer's stated reason for terminating him is pretextual. Indeed, the only evidence that he has to demonstrate pretext is the close relation in time between his reporting of the overcharges and his termination. We have held that temporal proximity alone is not enough to prove pretext. See Roberts v. Broski, 186 F.3d 990, 995 (7th Cir. 1999)./1 The district court therefore correctly entered summary judgment in favor of Kmart.

AFFIRMED.

/1 As we noted in Broski, chronology can sometimes support an inference that a discharge is discriminatory. For example, when an employee receives praise one day and is confronted with a laundry list of criticism the next, she may be able to establish pretext where the only intervening event was the disclosure that she is disabled. Bourbon has no such claim here because Kmart's criticism of him was consistent throughout his one month tenure at the store. See Broski, 186 F.3d at 995 n.3.

Posner, Circuit Judge, concurring. I join the panel's opinion but write separately to flag for future consideration an issue (ignored by the parties, hence waived) that is implicit in the following sentence in the opinion: "Illinois retaliatory discharge cases brought in federal court may be analyzed using the burden-shifting method presented in McDonnell-Douglas [Corp. v. Green, 411 U.S. 792 (1973)]" (emphasis added). In support of this proposition, the opinion cites

Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 767 (7th Cir. 1994), which in turn cites McEwen v. Delta Air Lines, Inc., 919 F.2d 58 (7th Cir. 1990). Neither case cites any authority for the proposition other than Hiatt's citation of McEwen. The only reason given for the result is a statement in McEwen that since the McDonnell-Douglas standard regulates merely the order of proof, it is procedural rather than substantive within the meaning of the Erie doctrine and it therefore governs diversity cases as well as federal-question cases. So even though the Supreme Court of Illinois expressly rejected the application of McDonnell-Douglas to Illinois retaliatory-discharge cases in Clemons v. Mechanical Devices Co., 704 N.E.2d 403, 407-08 (Ill. 1998), should such a case wander into federal court by virtue of the diversity jurisdiction the court should apply McDonnell-Douglas to it.

Our sister circuits have assumed, to the contrary, that state law, not federal law, governs the burden-shifting standard applicable to cases in which the rule of decision is state rather than federal. E.g., Perry v. Woodward, 199 F.3d 1126, 1141-42 (10th Cir. 1999); Norville v. Staten Island University Hospital, 196 F.3d 89, 95 (2d Cir. 1999); Payne v. Norwest Corp., 185 F.3d 1068, 1073-74 (9th Cir. 1999); Carpenter v. Federal Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999); Mullin v. Raytheon Co., 164 F.3d 696, 699 (1st Cir. 1999); King v. Herbert J. Thomas Memorial Hospital, 159 F.3d 192, 198 (4th Cir. 1998); Lee v. State of Minnesota, Dept. of Commerce, 157 F.3d 1130, 1133 (8th Cir. 1998); Nichols v. Lewis Grocer, 138 F.3d 563, 565-66 (5th Cir. 1998); Olson v. General Electric Astrospace, 101 F.3d 947, 956 (3d Cir. 1996); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 n. 8 (6th Cir. 1994). These cases do not discuss the choice of law issue; they merely take for granted that the McDonnell-Douglas standard is substantive for Erie purposes; nor have I found any illuminating scholarly discussions of the issue. But I am inclined to think that the position (or better perhaps the instinct) of these other circuits is correct.

To describe the McDonnell-Douglas standard as merely prescribing the order of proof and the allocation of burdens of production, though common, see, e.g., Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2106 (2000), and literally correct, is an invitation to misunderstanding. Ordinarily, if all a plaintiff in a discrimination case could show was that he was qualified for a job (or promotion, or retention) but was passed over in favor of a person of a different race (sex, religion, etc.),

his opponent would be entitled to summary judgment, because no reasonable jury could infer from these bare facts that it was more likely than not that the employer's action was invidious. Under McDonnell-Douglas, this bare showing compels summary judgment for the plaintiff unless the defendant produces evidence of a noninvidious reason for the action complained of. Applied to retaliation, the logic of the McDonnell-Douglas standard would compel summary judgment for the plaintiff who showed that after lodging a complaint about discrimination, he (but not any otherwise similarly situated employee who did not complain) was fired or otherwise subjected to an adverse employment action even though he was performing his job in a satisfactory manner, unless, again, the defendant presented a noninvidious reason for the action. Hiatt v. Rockwell Int'l Corp., supra, 26 F.3d at 767; McEwen v. Delta Air Lines, Inc., supra, 919 F.2d at 59. Without the boost given by McDonnell-Douglas, the plaintiff in such a case would have to establish, as part of his prima facie case and thus before the defendant had any burden of explanation, a causal connection between the lodging of the complaint and his being fired.

And so the Illinois court concluded in Clemons that to follow McDonnell-Douglas in an Illinois retaliatory-discharge case "would, in essence, expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort. Because we refuse to expand the tort of retaliatory discharge, we decline plaintiff's invitation to adopt the three-tier allocation of proof method in retaliatory discharge cases." 704 N.E.2d at 408. In like vein the U.S. Supreme Court recently found "substantive" a New York state law regulating review of damages awards because while the statute "contain[ed] a procedural instruction . . . the State's objective [wa]s manifestly substantive." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 429 (1996). In rejecting McDonnell-Douglas for retaliation cases, the objective of the Illinois court likewise was "manifestly substantive," namely to avoid "expand[ing] the tort of retaliatory discharge." Or as we put it in S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist., 60 F.3d 305, 310 (7th Cir. 1995), "the state's goals are substantive--designed to shape conduct outside the courtroom and not just improve the accuracy or lower the cost of the judicial process--though the means are procedural."

A practical way to decide whether a rule of state law is substantive or procedural for purposes of the Erie doctrine is to ask whether

the rule is limited to a particular substantive area or whether it applies across the board. If the former, it is likely to reflect substantive policy, to which the federal court should defer, and if the latter to be a product of purely procedural concerns that properly may differ between federal and state courts. E.g., Herremans v. Carrera Designs, Inc., 157 F.3d 1118, 1123 (7th Cir. 1998); S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist., supra, 60 F.3d at 310. It was on this basis that we suggested in Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 364 (7th Cir. 1990), that the doctrine of "mend the hold," a type of estoppel, was substantive for Erie purposes insofar as it was limited to contract cases, just like the parol evidence rule, which might otherwise be thought a rule of procedure. "Rules of contract interpretation, such as the parol evidence and four-corners rules, are deemed substantive, because of their effect on the conduct of contracting parties outside the courtroom, even though the rules operate through limiting the kinds of evidence that are admissible." AM Int'l, Inc. v. Graphic Management Associates, Inc., 44 F.3d 572, 576 (7th Cir. 1995). The McDonnell-Douglas rule, unlike for example the rule that a motion for summary judgment need not be supported by evidence, Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986), is not a general rule of federal procedure; it is tailored for and limited to discrimination cases, as we emphasized in Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711 (7th Cir. 1997). It is part of the law of discrimination, which is substantive.

But there is a rather considerable complication. The McDonnell-Douglas standard that we apply in most of our retaliation cases is not really the McDonnell-Douglas standard. The logical adaptation of McDonnell-Douglas to retaliation, the adaptation we assumed in Hiatt and McEwen and that may have led the Supreme Court of Illinois to reject its use in cases under the Illinois law of retaliatory discharge, is, as I have suggested, to entitle the plaintiff to summary judgment if he shows that after lodging a complaint about discrimination, only he, not otherwise similarly situated employees who did not complain, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. But most cases in this and other circuits hold that the prima facie case of retaliation under McDonnell-Douglas requires more--requires proof of a "causal link" between the protected expression in which the plaintiff engaged (as by filing a complaint about an unlawful act by his employer) and the adverse employment action of which he is complaining. E.g., Miller v. American Family Mutual Ins. Co.,

203 F.3d 997, 1007 (7th Cir. 2000); Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000); Byers v. Dallas Morning News, Inc., 209 F.3d 419, 427 (5th Cir. 2000); Jones v. Washington Metropolitan Area Transit Authority, 205 F.3d 428, 433 (D.C. Cir. 2000).

If this means that the plaintiff must present evidence that his protected expression caused the defendant to retaliate, then McDonnell-Douglas really does regulate just the order of proof and the allocation of burdens of production and has no substantive implications, since the plaintiff would have to prove as much in a retaliation case if McDonnell-Douglas had never been heard of. But it would be better then to drop reference to McDonnell-Douglas altogether, because cases such as Miller and Sauzek go on to say, very confusingly as it seems to me, that after the plaintiff has made his prima facie case, the defendant can defeat it by producing evidence that the motive for the adverse employment action was not retaliatory, unless the plaintiff is able to come back and show that the alleged nonretaliatory motive was actually pretextual. That is McDonnell-Douglas-speak, all right, but it is out of place. If the plaintiff has produced evidence that he was fired because of his protected expression, he has gone beyond McDonnell-Douglas by producing actual evidence of unlawful conduct, and that should be enough to get him to a jury. McDonnell-Douglas is designed to give the plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances. If he can prove retaliation with evidence that his protected expression was in fact the cause of his being fired, he doesn't need McDonnell-Douglas and it gives him nothing.

Further complicating the picture, however, is disagreement--or maybe sheer muddle--as to what "causal link" means. If it means, as I have assumed thus far, and as we held in King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999); Johnson v. City of Fort Wayne, 91 F.3d 922, 939 (7th Cir. 1996), and Klein v. Trustees of Indiana University, 766 F.2d 275, 280 (7th Cir. 1985), that the plaintiff must present evidence that had it not been for his protected expression, he would not have been fired (or suffered whatever other adverse action of which he complains), then the situation is as I have described it: McDonnell-Douglas has no proper role to play in a federal retaliation suit. But the Fifth and Eleventh Circuits have held that all that "causal link" signifies in this context is that the protected expression and the adverse action "were not wholly unrelated," and that this means that something less than proof that the plaintiff wouldn't have been fired (or suffered

other adverse action) had he not engaged in the protected expression--less than proof, that is, of "but for" causation (what philosophers call a necessary condition)--will suffice to complete the prima facie case. Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th Cir. 1996); Simmons v. Camden County Board of Education, 757 F.2d 1187, 1189 (11th Cir. 1985). And some of our cases accept this definition, e.g., Sauzek v. Exxon Coal USA, Inc., supra, 202 F.3d at 918; Hunt-Golliday v. Metropolitan Water Reclamation District, 104 F.3d 1004, 1014 (7th Cir. 1997)--yet without attempting to distinguish King, Johnson, and Klein or to explain what "not wholly unrelated" means. In Sauzek and Hunt-Golliday, we actually required (despite our "not wholly unrelated" language) proof of a causal relation, 202 F.3d at 918-19; 104 F.3d at 1014-15, while Johnson, a case that recites the stricter test, accepts a mere coincidence in timing--expressly rejected by Sauzek as sufficient to prove that the protected expression and the adverse employment action were "not wholly unrelated," 202 F.3d at 919--as proof of the required causal link! 91 F.3d at 939.

Someday we'll have to decide what the prima facie case of retaliation is in the Seventh Circuit. But whatever it is has no relation to McDonnell-Douglas, which is not about the meaning of "causal link." The Erie issue, however, may turn on that meaning. If the requirement of proving cause is so attenuated as to give the plaintiff a boost toward winning his case that he would not have under ordinary rules of pleading and production, then there is a conflict with substantive state law, and what the federal courts inaptly call the McDonnell-Douglas standard for proving retaliation must give way in any retaliation case governed by state law. If the prima facie case of retaliation under federal law is instead what I am calling the logical adaptation of McDonnell-Douglas, requiring no evidence of causation at all, then even more clearly it must give way in a case governed by state law. In either event Hiatt and McEwen would have to be reexamined. Only if the prima facie case of retaliation under federal law requires proof of a causal relation in the usual sense, without attenuation, is there no conflict between state and federal law, at least in Illinois, which requires such proof. Only then would the "McDonnell-Douglas" standard, though thoroughly misnamed when interpreted to require (unlike McDonnell-Dougas) proof of causation to make out a prima facie case, properly apply to state retaliation cases litigated in federal courts.