**Antonio CONTRERAS, Plaintiff,**

v.

**SUNCAST CORPORATION, Thomas Tisbo, John Baunach, Michael Hamilton and Randall Guillotte, Defendants.**

**No. 00 C 2679.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 12, 2001.

Richard R. Rothman, Chicago, IL, for Plaintiff.

Randall M. Lending, Thomas W. Synder, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the court grants defendants' motion for summary judgment on all counts.

## I. BACKGROUND[1]

### A. Factual background

Plaintiff Contreras, a United States citizen born in Mexico, was hired as a forklift operator at defendant Suncast Corporation's ("Suncast") Batvia, Illinois manufacturing facility on November 14, 1994. During Contreras's employment, Thomas Tisbo ("Tisbo") was Suncast's President, Michael Hamilton ("Hamilton") was its Vice President, John Baunach ("Baunach") was Manager of Human Resources, and Randall Guillotte ("Guillotte") was a production flow supervisor responsible for supervising forklift drivers.

On June 21, 1995, Contreras injured his back on the job in a forklift accident. He filed a workers' compensation claim on July 21, 1995. Then, on August 10, 1995, he was laid off—along with several other employees—due to a general reduction in force, but he was recalled on October 24, 1995. When he returned to work, plaintiff claimed his back injury was aggravated by other minor injuries he incurred on the job—for example, "he cut his finger on some paper," and he "was knocked in the head ... by another employee who was carrying a 'foot-locker' above his head, and the other employee turned, causing the locker to bang into Contraras' [sic] head." (Pl.'s Compl. ¶¶ 29–34.) On December 18, 1995, Contreras was injured again when he stood up quickly and struck his head on a metal rack after hearing Guillotte call out to him.

Even before the forklift injury, Contreras had a poor work and disciplinary record. He reported late for work eleven days and was absent from work three days between November 1994 and March 1995. After his injury, he continued this poor work record. For example, he received warnings for violating forklift safety rules in July 1995 and for calling his supervisor "chingado"—which means "motherfucker" in Spanish—in November 1995. Also, between January 3 and February 8, 1996, he was absent seven more times and violated Suncast's attendance policies each time by failing to provide any documentation regarding the reasons he was absent. Even worse, he falsified a time card to cover up one of these violations. When Suncast suspended Contreras for falsifying his time card, Contreras filed an EEOC charge, claiming that Suncast discriminated

---

**1.** Unless otherwise indicated, the following facts are taken from defendants' Local Rule 56.1 Statement of Undisputed Facts.

against him on the basis of national origin. His EEOC claim was later dismissed on summary judgment. *See infra* Sect. I.B.1.

After progressively disciplining Contreras for his offenses, Suncast finally discharged Contreras on February 13, 1996, after he received his eighth attendance violation in six weeks. However, on February 14, 1996, after discussions with Contreras's union representative, Suncast agreed to reinstate Contreras without any condition that he waive any claims he may have against Suncast. Instead of accepting this offer, however, Contreras told his union representative he would rather pursue legal action.

## B. *Procedural background*

### 1. *Contreras's prior lawsuit*

In June 1996, Contreras filed suit in district court against the same defendants involved in the present case—Suncast, Tisbo, Baunach, Hamilton, and Guillotte (collectively "defendants"). In that case, plaintiff alleged (1) that he was wrongfully terminated and not given a light work duty in violation of Title VII of the Civil Rights Act of 1964; (2) that Suncast retaliated against him by discharging him after he filed an EEOC charge, in violation of Title VII; (3) that he was not reasonably accommodated after his injury and discriminated against for requesting accommodations, in violation of the ADA; (4) that Guillotte assaulted him by intentionally causing him to bang his head on the metal rack; (5) that defendants were negligent in supervising Guillotte and directing Guillotte to stalk and assault Contreras; and (6) that Suncast wrongfully discharged him after he filed a workers' compensation claim. *Contreras v. Suncast Corp.*, No. 96 C 3439, slip op. at 3 (N.D.Ill. Mar.15, 2000) (J. Williams).

On March 15, 2000, Judge Williams entered summary judgment for Suncast and against Contreras on all federal claims and dismissed the supplemental state law claims without prejudice. *Id.* at 19. Judge Williams found that Contreras could not prove he was meeting Suncast's legiti-

mate expectations and that he could not show that similarly situated non-Hispanic employees received more favorable treatment. *Id.* at 7–9. On January 3, 2001, the Seventh Circuit affirmed Judge Williams's March 15, 2000 order in its entirety, as well as the judgment granting the May 22, 2000 bill of costs. *Contreras v. Suncast Corp.*, 237 F.3d 756, 758 (7th Cir.2001).

### 2. *Contreras's current lawsuit*

Since the conclusion of his first lawsuit, Contreras moved to Texas, and on May 3, 2000, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), he refiled in this court his supplemental state law claims that were dismissed without prejudice by Judge Williams. *Contreras*, slip op. at 19. In Count I, Contreras alleges that the defendants wrongfully discharged him in violation of Illinois public policy because he filed a workers' compensation claim. In Count II, Contreras alleges that Guillotte—acting as an agent of Suncast and on behalf of and at the direction of the other individual defendants—assaulted him by calling out to him, causing him to bump his head on a metal rack. In Count III, Contreras alleges negligent supervision, claiming that Suncast, Tisbo, Baunach, and Hamilton were negligent in supervising and directing Guillotte to assault him by calling out to him.

Currently before the court is the defendants' motion for summary judgment on all counts. Despite the court's briefing schedule requiring Contreras to file his response by January 4, 2001, Contreras neither filed a response to defendants' motion for summary judgment nor moved for an extension of time to answer. Thus, Contreras presents no evidence of his own proving a genuine issue of material fact. On January 11, 2001, defendants filed their reply in accordance with the court's briefing schedule, noting Contreras's failure to file his response brief and notifying the court of the January 3, 2001 Seventh Circuit decision affirming Judge Williams's order of summary judgment. *See Contrer-*

*as,* 237 F.3d at 758. In accordance with Local Rule 78.3, the court will decide defendants' motion for summary judgment without the benefit of Contreras's response. Loc. R. 78.3 (stating that "[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion *or grant the same without further hearing.*") (emphasis added).

## II. DISCUSSION

### A. Legal standard

#### 1. Summary judgment standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see James v. Sheahan,* 137 F.3d 1003, 1006 (7th Cir.1998). A genuine issue of material fact exists when, viewing the record and drawing all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party makes a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa Ger-*

*man Airlines,* 875 F.2d 613, 620 (7th Cir. 1989).

#### 2. Requirements under Local Rule 56.1

Local Rule 56.1, formerly Local Rule 12, sets forth guidelines for litigants moving for and opposing summary judgment. Under the local rule, the party moving for summary judgment must file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Loc. R. 56.1(a)(3). The required statement must consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.*

Further, a party opposing a motion for summary judgment must file a response to the movant's statement of facts, including specific answers for each numbered paragraph in the movant's statement. *See* Loc. R. 56.1(b)(3)(A). Any facts in the movant's statement that are not specifically denied will be deemed admitted in considering the motion for summary judgment. *Id.; see also Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.2d 524, 526 (7th Cir. 2000).

As stated earlier, Contreras, despite being fully appraised of his obligations, failed to file any response to defendants' motion for summary judgment, and the court is left to consider his allegations devoid of any evidentiary support.[2] Rule 56 of the Federal Rules of Civil Procedure does not authorize the granting of summary judgment as a sanction for failing to file a proper response to a motion for summary judgment. FED. R. CIV. P. 56; *see also Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir.1993). Rather, Rule 56(e) permits summary judgment only "if appro-

---

**2.** The court finds troubling the fact that plaintiff has not only filed what appears to be a meritless—if not frivolous—case, but that plaintiff has also failed to pursue or defend his claims against a summary judgment mo-

tion. Unfortunately, the court cannot simply grant the summary judgment motion but must take the time to address the substance or lack thereof of plaintiff's claims.

priate—that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Id.* Nonetheless, by failing to file a proper Local Rule 56.1(b) Statement, Contreras is deemed to have admitted the factual assertions presented by the defendants in their Local Rule 56.1(a) Statement. *See* Loc. R. 56.1(b)(3)(B) (specifying that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 689 (7th Cir.2000) (accepting as true all material facts set out in Local Rule 56.1(a) Statement, where non-moving party has failed to comply with Local Rule 56.1(b)). As a result, this court must determine whether summary judgment is proper as a matter of law by reviewing the record and facts as presented by defendants and by drawing all justifiable inferences in favor of Contreras. *See Wienco, Inc. v. Katahn Assocs., Inc.,* 965 F.2d 565, 568 (7th Cir.1992).

In deciding defendants' summary judgment motion, the court is under no obligation to search for genuine issues of material fact that are not properly presented in the parties' factual statements or responses thereto. *See Brasic v. Heinemann's Inc.,* 121 F.3d 281, 285 (7th Cir. 1997) (citing *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995) (stating that "[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact.")); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.1994) (holding that statements required by 56.1 are "roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own."); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Therefore, the court does not look beyond defendants' Rule 56.1 Statement to search for genuine issues of material fact.

## B. Count I—Retaliatory discharge under Illinois law

In Count I, Contreras alleges that defendants wrongfully discharged him on February 13, 1996, in retaliation for filing a workers' compensation claim on July 21, 1995. Defendants assert that Contreras's retaliatory discharge claim should be dismissed because (1) Contreras is collaterally estopped from establishing a necessary element of his claim—that he adequately performed his job, and (2) there is no evidence that Contreras's discharge was linked to filing a workers' compensation claim. The court agrees with defendants.

### 1. Collateral estoppel

Defendants assert that they are entitled to summary judgment on Contreras's retaliatory discharge claim because the issue concerning the propriety of Contreras's discharge was definitely decided in their favor by Judge Williams in a previous proceeding and affirmed on appeal, making the current claim barred by application of collateral estoppel. The court agrees with defendants.

Collateral estoppel refers to a judgment's effect of "foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Havoco of Am. v. Freeman, Atkins & Coleman,* 58 F.3d 303, 307 (7th Cir.1995) (quoting *La Preferida v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905 n. 7 (7th Cir.1990)). There are four prerequisites for the application of collateral estoppel: (1) the issue that one party seeks to preclude is identical to an issue involved in a prior action, (2) the issue was actually litigated in the prior action, (3) determination of the issue was essential to final judgment in the prior action, and (4) the party precluded from relitigating the issue was represented in the prior action. *See Chicago Truck Drivers v. Century Motor Freight, Inc.,* 125 F.3d 526, 530 (7th Cir.1997).

In this case, Contrares's prior litigation in front of Judge Williams resolved the issue of his job performance in deciding that he failed to meet the legitimate expectations of his employer. *Contreras,* slip op. at 8–9. In his prior lawsuit, Contreras claimed, *inter alia,* that defendants discriminated against him based on his national origin in discharging him, in violation of Title VII. *Id.* at 3. In dismissing his Title VII claim on summary judgment, Judge Williams concluded that Contreras could not establish his prima facie case because he failed to show that his job performance met defendants' legitimate expectations. *Id.* at 8–9. Specifically, Judge Williams found that:

> Contreras's pattern of conduct demonstrates that no reasonable fact finder could conclude that he was meeting the legitimate expectations of his employer. Although Contreras contends that such violations were "trivial," the court finds otherwise. Suncast could have fired plaintiff on a number of occasions for insubordination, falsification of records, and repeated tardiness. These violations were not trivial. On the contrary, this kind of employee behavior is not only unproductive, it negatively affects the entire workplace if left unchecked.

*Id.* Judge Williams's findings were affirmed on appeal. *Contreras,* 237 F.3d at 758 ("All these facts show that Contreras was not meeting the legitimate expectations of Suncast, and Contreras has not presented evidence to demonstrate the existence of a genuine issue of material fact on the subject.").

In this lawsuit, Contreras claims defendants retaliated against him—in violation of Illinois law—because he filed a workers' compensation claim. Illinois retaliatory discharge cases brought in federal court may be analyzed using the burden-shifting method presented in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Bourbon v. Kmart Corp.,* 223 F.3d 469, 473 (7th Cir.2000). To establish a prima facie case using this method, Contreras must show "that he was in a protected class, that he was perform-

ing his job satisfactorily, that he was nevertheless the subject of a materially adverse employment action, and that others outside the class were treated more favorably." *Id.* If Contreras can establish his prima facie case, defendants "must then articulate a legitimate, nondiscriminatory reason for his termination." *Id.* The burden then shifts back to Contreras to show that defendants' proffered reason is nothing more than a pretext for unlawful discrimination. *Id.*

Thus, as a necessary element of his Illinois retaliatory discharge claim, Contreras must establish that he performed his job satisfactorily and met the legitimate expectations of his employer. This issue has already been conclusively established against Contreras by Judge Williams and affirmed on appeal. *See Contreras,* slip op. at 8–9; *Contreras,* 237 F.3d 756, 758. Thus, (1) the issue defendants seek to preclude in this case—the fact Contreras did not perform his job satisfactorily and did not meet the legitimate expectations of his employer—is identical to the issue involved in Contreras's prior Title VII action; (2) the issue was actually litigated in the prior action in front of Judge Williams; (3) determination of the issue of job performance was essential to final judgment regarding Title VII discrimination in the prior action; and (4) the party precluded from relitigating the issue—Contreras—was fully represented in the prior action. *See Chicago Truck Drivers,* 125 F.3d at 530. All four prerequisites of collateral estoppel are present, making Contreras collaterally estopped from claiming that he adequately performed his job.

Thus, because Contreras is collaterally estopped from establishing a necessary element of his Illinois retaliatory discharge claim—that he performed his job satisfactorily and met the legitimate expectations of his employer—the court grants defendants' motion for summary judgment on Count I of Contreras's complaint.

### 2. *Retaliation for filing a workers' compensation claim*

Even if collateral estoppel did not preclude Contreras from establishing his Illinois retaliatory discharge claim, defendants assert that his claim should be dismissed because the undisputed evidence establishes that Contreras was discharged due to his "horrendous overall work record," and because there is no evidence that Contreras's discharge was linked to filing a workers' compensation claim. Again, the court agrees with defendants.

Generally, an at-will employee may be discharged for any reason or for no reason at all. *Sweat v. Peabody Coal Co.*, 94 F.3d 301, 304 (7th Cir.1996). Nevertheless, Illinois law recognizes the tort of retaliatory discharge in cases in which an employee is terminated for filing a workers' compensation claim. *Bourbon,* 223 F.3d at 472 (citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353, 358 (1978)). A valid claim for retaliatory discharge requires a showing that (1) an employee has been discharged, (2) in retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy. *Id.* (citing *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992)). In the workers' compensation context, a plaintiff must show (1) that he was the defendants' employee before his injury, (2) that he exercised a right granted by the Illinois Workers' Compensation Act ("IWCA"), and (3) that his discharge was causally related to his filing a workers' compensation claim. *Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 767 (7th Cir.1994).

In this case, defendants do not contest the first or second prong, but they do dispute the third prong. The court focuses, therefore, on whether Contreras has adduced evidence sufficient to show his discharge was causally related to his filing a workers' compensation claim.

It is undisputed that Contreras presents no direct evidence demonstrating a link between his filing a workers' compensation claim and his termination. Thus, the court will analyze Contreras's claim using the burden-shifting method presented in *McDonnell Douglas.* To establish a prima facie case using this method, Contreras must show "that he was in a protected class, that he was performing his job satisfactorily, that he was nevertheless the subject of a materially adverse employment action, and that others outside the class were treated more favorably." *Bourbon,* 223 F.3d at 473. If Contreras can establish his prima facie case, defendants "must then articulate a legitimate, nondiscriminatory reason for his termination." *Id.* The burden then shifts back to Contreras to show that defendants' proffered reason is nothing more than a pretext for unlawful discrimination. *Id.*

Contreras fails to establish a claim for retaliatory discharge in at least two regards. First, Contreras fails to establish a prima facie case for retaliatory discharge because it is undisputed that he failed to perform his job satisfactorily. Second, even if he showed that he performed his job satisfactorily and established his prima facie case, Contreras presents no evidence that defendants' stated reason for terminating him is pretextual.

#### a. Contreras fails to establish a prima facie case of retaliation

Contreras fails to establish a prima facie case for retaliatory discharge because it is undisputed that he failed to perform his job satisfactorily. The court agrees with Judge Williams's finding that Contreras failed to meet the legitimate expectations of his employer. Again, in her ruling, Judge Williams stated,

> Contreras's pattern of conduct demonstrates that no reasonable fact finder could conclude that he was meeting the legitimate expectations of his employer. Although Contreras contends that such violations were "trivial," the court finds otherwise. Suncast could have fired plaintiff on a number of occasions for insubordination, falsification of records, and repeated tardiness. These viola-

tions were not trivial. On the contrary, this kind of employee behavior is not only unproductive, it negatively affects the entire workplace if left unchecked. *Contreras,* slip op. at 8–9. The undisputed evidence presented in the present case establishes that Contreras was often late or absent from work without an excuse, he used profanity against his supervisors, he violated safety rules, and he falsified his time card. Thus, the undisputed evidence clearly establishes that Contreras did not satisfy the legitimate expectations of his employer, and Contreras has failed to establish his prima facie case.

### b. Contreras fails to show pretext

Even if there was a possibility Contreras performed his job satisfactorily and met his burden of establishing a prima facie case, Contreras's claim still fails because he does not show that defendants' legitimate, nondiscriminatory reason for terminating him is pretextual.

Defendants have provided evidence that the legitimate, nondiscriminatory reason they terminated Contreras was his poor attendance record and numerous disciplinary infractions. On November 14, 1994, Contreras acknowledged receiving a copy of Suncast's Work Rules and General Plant Safety Rules. Those rules establish two groups of violations. Relevant to this case, Group B violations include failing to obey safety rules (Rule B–7), and repeated unexcused absences (Rule B–11). (Defs.' Mot., Ex. at 2.) By including these requirements in its work rules, Contreras cannot claim that these were not legitimate expectations of the company. *Contreras,* 237 F.3d at 758. The undisputed evidence is that Contreras did not meet these expectations. As the Seventh Circuit found,

> Contreras was repeatedly cited for operating his forklift in an unsafe manner. Furthermore, within less than six weeks, Contreras violated the company's work attendance guidelines on no less than eight occasions. On one such occasion, Contreras doctored company records in an attempt to conceal his infraction. Fi-

nally, the "chingado incident," as Contreras refers to it, shows a level of insubordination that in itself was worthy of dismissal.

*Id.* Likewise, the undisputed evidence in the present case establishes that Suncast had a legitimate, nondiscriminatory reason for terminating Contreras because of his poor attendance record and numerous disciplinary infractions, including falsifying documents, violating safety rules, and insubordination.

■ Under Illinois law, "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Bourbon,* 223 F.3d at 472. To establish pretext, Contreras must show that either: (1) the employer was more likely motivated by a discriminatory reason, or (2) the employer's proffered reason is unworthy of credence. *McCoy v. WGN Cont'l Broad. Co.,* 957 F.2d 368, 372 (7th Cir.1992). Contreras presents no evidence beyond the unsubstantiated, conclusory allegations of retaliation contained in his complaint, and this is not enough to demonstrate pretext. *See Hiatt,* 26 F.3d at 771–72 (stating that bare assertions of retaliation are not enough to withstand a motion for summary judgment); *Kwon v. Lutheran Gen. Hosp., Inc.,* No. 98 C 5611, 1999 WL 705840, at *4 (N.D.Ill. Aug.27, 1999) (holding that a non-movant must present documentary evidence beyond allegations in pleadings or conclusory statements to withstand a motion for summary judgment).

Aside from presenting no evidence establishing that defendants' reason for terminating him was pretext for discrimination, Contreras does not even assert any *argument* regarding pretext. The record contains no facts supporting an inference that Contreras's discharge was in any way connected to his assertion of a claim for workers' compensation benefits. *See Austin v. St. Joseph Hosp.,* 187 Ill.App.3d 891, 135 Ill.Dec. 364, 543 N.E.2d 932, 935 (1989) (finding summary judgment appropriate in the absence of such facts). Rather, the

undisputed evidence establishes that Contreras was terminated for a legitimate, nondiscriminatory reason, and that this reason is not pretextual. Accordingly, the court grants defendants' motion for summary judgment on Count I of Contreras's complaint.

### C.  *Count II—Assault*

■ In Count II, Contreras alleges that defendant Guillotte—acting as an agent of Suncast and on behalf of and at the direction of the other individual defendants—assaulted him by calling out his name, causing him to bump his head on a metal rack. Defendants contend they are entitled to summary judgment on Contreras's assault claim because the undisputed evidence establishes that Guillotte did not assault or intend to assault Contreras. The court agrees with defendants.

In Illinois, assault is defined as "an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented." *Ofoma v. Armour,* No. 97 C 6420, 1998 WL 409381, at \*4 (N.D.Ill. June 25, 1998) (quoting *Parrish by Bowker v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 443 N.E.2d 786, 788 (1982)). A claim for assault must include an allegation of a reasonable apprehension of an imminent battery. *Mellerke v. McMurdo,* No. 94 C 2030, 1995 WL 461887, at \*5 (N.D.Ill. July 14, 1995).

Contreras's sole basis for his assault claim revolves around an incident in the warehouse on December 18, 1995, when Guillotte was looking for Contreras. Guillotte called out Contreras's name, and upon finding him, said, "Hey, there you are." This startled Contreras, causing Contreras to bump his head on a metal rack.[3]

The record contains no facts supporting an inference that Guillotte assaulted or intended to assault Contreras when he called out to him in the warehouse. It is undisputed that Guillotte never made any attempt to touch Contreras, made any threatening movement or gesture in Contreras's direction, or threatened to touch Contreras. It is undisputed that Guillotte did not intend to startle Contreras or cause Contreras to injure himself. Further, it is undisputed that Contreras did not see Guillotte before Guillotte called to him. Without even seeing Guillotte, Contreras could not have reasonably believed himself to be in imminent risk of physical harm, and Guillotte could not have caused him to have a reasonable apprehension of an imminent battery. Accordingly, the court grants defendants' motion for summary judgment on Count II of Contreras's complaint.[4]

### D.  *Count III—Negligent supervision*

■ In Count III, Contreras alleges that Suncast, Tisbo, Baunach, and Hamilton negligently supervised Guillotte by permitting and directing him to stalk and assault Contreras. As stated in *supra* Sect. II.C., Contreras's sole basis for claiming Guillotte assaulted him revolves around the incident in the warehouse when Guillotte said, "Hey, there you are," startling Contreras and causing Contreras to bump his head on a metal rack. Thus,

**3.** While Contreras's complaint states that Guillotte assaulted or stalked him by "continuously following him at work … interrupting Contreras when Contreras was in a dangerous enclosed work space … [and] distracting Contreras," (Compl.¶¶ 66–72), Contreras admitted in his deposition that his assault claim is based solely upon the December 18, 1995 incident in the warehouse when Contreras hit his head on a metal rack after hearing Guillotte call out to him. (Defs.' Mot., Ex. C at 580:12–14.)

**4.** It also appears that Contreras's assault claim is preempted by the Illinois Workers' Compensation Act. *See Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 323–24 (7th Cir.1992) (holding that the IWCA generally preempts common law torts based on assaults). Neither party addresses this argument. Regardless, because the court finds that the undisputed evidence establishes that Guillotte did not assault or intend to assault Contreras, the court need not address possible preemption under the IWCA.

Contreras's sole basis for claiming negligent supervision is that the defendants permitted and directed Guillotte to "assault" Contreras in this manner.[5] Defendants contend that they are entitled to summary judgment on Contreras's negligent supervision claim because it is barred by the exclusivity provision of the Illinois Workers' Compensation Act. The court agrees with defendants.

The IWCA ensures that employees may recover from employers for accidental injuries arising out of and in the course of employment. 820 ILL. COMP. STAT. 305/5(a); *see also Simmons v. Chicago Pub. Library*, 860 F.Supp. 490, 493–94 (N.D.Ill. 1994) (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1226 (1990)). In exchange, the IWCA's exclusivity provision bars employees from pursuing common law claims and statutory actions against employers for accidental injuries sustained during the course of employment. *Id.*

■ There are four exceptions to the IWCA's exclusivity provision: (1) the injury was not accidental, (2) the injury did not arise from employment, (3) the injury was not received during the course of employment, or (4) the injury was not compensable under the IWCA. *Walker v. Doctors Hosp. of Hyde Park*, 110 F.Supp.2d 704, 714 (N.D.Ill.2000) (citing *Meerbrey*, 151 Ill. Dec. 560, 564 N.E.2d at 1226). Here, because the alleged negligent supervision arose from employment, was received during the course of employment, and was compensable under the IWCA, the only exception that could possibly apply to Contreras's allegations is the first exception—that his injury was intentional and not accidental. *Rushing v. United Airlines*, 919 F.Supp. 1101, 1111–12 (N.D.Ill. 1996) (finding that the IWCA abrogates employer liability for all common law negligence claims, including negligent supervision).

■ For this exception to apply, Contreras must show that his employer or

its alter ego intentionally inflicted the injury by commanding or expressly authorizing it. *Meerbrey*, 151 Ill.Dec. 560, 564 N.E.2d at 1226. *See also Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill.Dec. 776, 408 N.E.2d 198 (1980) (holding that an employer must have directed, encouraged, or committed alleged intentional torts for a plaintiff to escape exclusive remedy provision of the IWCA). More specifically, in a case like this of coworker assault, an employee must show that his employer or its alter ego acted with a specific intent to injure the employee through the acts of the employee's co-workers. *Walker*, 110 F.Supp.2d at 714.

Assuming, *arguendo*, that Contreras presented sufficient evidence to prove Guillotte actually assaulted him, there is absolutely no evidence on the record that any defendant in any way commanded, authorized, directed, or encouraged Guillotte's acts or even knew or should have known such assault was occurring. Nor has Contreras demonstrated that Guillotte—the production flow supervisor responsible for supervising forklift drivers—was the alter ego of Suncast. *See Crissman v. Healthco Int'l Inc.*, No. 89 C 8298, 1992 WL 223820, at *6 (N.D.Ill. Sept.2, 1992) (stating that finding a low-level supervisory employee the employer's alter ego defeats the purpose of the IWCA). Contreras has neither alleged nor produced any evidence from which this court could infer that Guillotte "in a practical sense [spoke] for the company" or possessed "the authority to make decisions and set policy on behalf" of the other defendants. *Id.* at *9 (stating that a defendant's "[s]tatus as a 'foreman, supervisor, or manager' alone, without the authority to make decisions and set policy on behalf of an employer, will not suffice to render an intentional tortfeasor an alter ego.") (internal citations omitted).

Rather, it is undisputed that there is no proof that any defendant directed Guillotte

---

5. The court addresses Contreras's negligent supervision claim assuming, *arguendo*, that

Guillotte did indeed assault Contreras by startling him in the warehouse.

to injure Contreras. In fact, in his deposition testimony, Contreras admitted he does not know whether anyone directed Guillotte to startle him. (Defs.' Mot., Ex. C at 585:3–586:8.) There is no evidence on the record either that any defendant authorized, directed, encouraged, or commanded the alleged assault, or that Guillotte was the alter ego of any other defendant. Because Contreras fails to establish that the alleged assault was not accidental, he fails to establish that an exception to the IWCA's exclusivity provision applies. Thus, the IWCA's exclusivity provision bars Contreras from pursuing his negligent supervision claim. Accordingly, the court grants defendants' motion for summary judgment on Count III of Contreras's complaint.[6]

### III. CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment on all counts. Final judgment in this case is entered in favor of defendants Suncast, Tisbo, Baunach, Hamilton and Guillotte, and against plaintiff Contreras.

---

6. Defendants also assert that they are entitled to summary judgment on Contreras's negligent supervision claim because Contreras presents no evidence that the defendants knew or had any reason to know that Guillotte would assault Contreras. (Defs.' Mot. at 2.). Again, while the court finds this argument convincing, the court need not make this determination because it finds that Contreras cannot establish that any exception to the IWCA's exclusivity provision applies.