**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CRST VAN EXPEDITED, INC.,
                *Plaintiff-Appellant,*

v.

WERNER ENTERPRISES, INC., doing
business in California as C.L.
Werner, Inc.,
                *Defendant-Appellee.*

No. 04-56809

D.C. No.
CV-04-04676-R

CRST VAN EXPEDITED, INC.,
                *Plaintiff-Appellant,*

v.

WERNER ENTERPRISES, INC., doing
business in California as C.L.
Werner, Inc.,
                *Defendant-Appellee.*

No. 04-57129

D.C. No.
CV-04-04676-R

OPINION

Appeals from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
October 23, 2006—Pasadena, California

Filed March 15, 2007

Before: A. Wallace Tashima, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bea

3183

---

**COUNSEL**

Barry Levenstam, Jenner & Block LLP, Chicago, Illinois, for the appellant; Scott T. Schutte and Kathy A. Karcher, Jenner & Block LLP, Chicago, Illinois, were on the briefs.

Robert M. Waxman, Ervin, Cohen & Jessup LLP, Beverly Hills, California, for the appellee. Andres Quintana, Ervin, Cohen & Jessup LLP, Beverly Hills, California, was on the brief.

---

**OPINION**

BEA, Circuit Judge:

This case calls on us to decide whether, under California law, a corporation's allegations that its competitor lured away employees who had signed employment contracts, sufficiently states two common law tort claims and one state statutory claim.

Appellant CRST Van Expedited, Inc. ("CRST") sued Werner Enterprises, Inc. ("Werner"), claiming Werner had intentionally interfered with CRST's employment contracts by soliciting and hiring away truck driver employees whom CRST had trained at its expense. CRST additionally claimed Werner violated California Business and Professions Code § 17200 *et seq.*, also known as the Unfair Competition Law ("UCL") and had interfered with CRST's prospective economic advantage. In a claim later informally withdrawn, CRST alleged Werner misappropriated CRST's trade secrets.

The district court granted Werner's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the first amended complaint, without reasoned analysis or explanation. The court also granted Werner's motion for attorneys' fees for CRST's bad faith filing of the trade secret claim. We now reverse in full the district court's dismissal of CRST's complaint. We affirm the district court's grant of attorneys' fees to Werner.

## I.   Factual and Procedural Background

*A.   Facts*

CRST alleged that it makes use of a three-phase driver training program ("DTP") to help individuals become certified to be truck drivers without having to spend their own money on such certification. CRST enters into the Pre-employment Driver Training Agreement ("training agreement") with an individual who seeks certification. The training agreement specifies that CRST will pay for the first two phases of a student's training, which consist of driver training at an educational facility selected by the student and not affiliated with CRST, and attendance at an orientation program at a site selected by CRST. After a student has successfully completed the first two phases, CRST and the student decide whether to enter into the Driver Employment Contract ("employment contract"). If CRST and the student enter the employment contract, CRST pays for the third phase of training, which consists of hands-on driver training with a CRST lead driver. The employment contract provides, in pertinent part:

> 3.   TERM OF EMPLOYMENT: *The term of CRST's employment of Employee under this contract shall be for a period of one (1) year* commencing as of the Effective Date subject to termination for Due Cause by CRST prior to the end of the term pursuant to Section 4 of this Contract. CRST's employment of Employee

after this one (1) year period shall be at will and may be terminated at any time by either CRST or Employee. . . .

   4.   TERMINATION OF EMPLOYMENT: During the one (1) year term of this Contract, CRST's employment of Employee may only be terminated for the following reasons: (1) by CRST for Due Cause, effective immediately, (2) by mutual agreement of CRST and Employee, and (3) upon the death of Employee. For the purposes of this Contract, "Due Cause" means Employee's breach of this Contract and/or Employee's failure to satisfy or comply with or violation of any of the standards, requirements, obligations and conditions set forth in the Handbook. Additionally, CRST may terminate the Employee's employment without Due Cause during the life of this Contract. *If Employee is terminated without Due Cause, under that circumstance, Employee is forgiven for the amount due under paragraph 6.*

   6.   REIMBURSEMENT OF AMOUNT DUE: Employee hereby agrees that if during the one (1) year term of this Contract: (1) Employee breaches this Contract, or (2) Employee's employment is terminated for Due Cause, then the total amount of $3,600.00 will be immediately due and payable by Employee to CRST. . . .

(Emphasis added.) The contract also requires the employee to devote "full time" to his employment with CRST and not to take actions in conflict with CRST's interests.

   Drivers Spencer and Chatman signed CRST's pre-employment driver training agreement and, after completing

some of CRST's training program, signed CRST's employ-
ment contract.[1] In February 2004, after Spencer and Chatman
had been employed by CRST for a month, CRST received
notice the two drivers had applied for employment with Wer-
ner after Werner requested information about them. CRST
responded with a series of letters: one on February 9, 2004,
advising Werner of the employment contract with Spencer; a
second on March 1, 2004, advising Werner of CRST's con-
tracts with Chatman and Spencer, and Werner's alleged inter-
ference with them; and a third on March 5, 2004, informing
Werner that both Spencer and Chatman were employed pursu-
ant to contracts with noncompetition clauses that would last
another 300 days. On March 24, 2004, CRST learned that
Spencer and Chatman had accepted truck driver positions
with Werner.[2] CRST alleged that Werner's hiring of Spencer
and Chatman were "but two examples of Werner's ongoing
course of conduct that involves waiting for CRST to train
driver [sic] through the DTP, at CRST's expense, and then
soliciting away those trained employees to work for Werner."

## B.    Procedural History

CRST's original complaint was filed in California Superior
Court and alleged Werner was liable for intentional interfer-
ence with contract, negligent interference with contract, and
violation of the UCL. After Werner removed the case to fed-
eral court and filed a Rule 12(b)(6) motion to dismiss the

---

[1]The Spencer employment contract states that it shall be governed by
the law of the state of California and any claim or dispute litigated in Cali-
fornia. The Chatman employment contract states that it shall be governed
by the law of the state of Iowa and any claim or dispute litigated in Iowa.
Otherwise, the contracts do not appear to differ materially. In this diversity
action, neither party attempted to invoke Iowa law below; hence, we do
not consider it. *See infra* at 3193-94.

[2]Chatman later returned to CRST, and again signed the employment
contract on March 25, 2004, only to leave again a week later, allegedly to
work for Werner.

complaint, CRST filed the First Amended Complaint ("FAC")[3] alleging two new claims. The claims in the FAC were: (I) intentional interference with contract; (II) negligent interference with contract; (III) violation of the UCL; (IV) interference with prospective economic advantage; and (V) misappropriation of trade secrets. CRST sought compensatory damages, punitive damages, attorneys' fees, a permanent injunction against the continuing solicitation of CRST's and other competitors' employees, determination of unjust enrichment, costs of suit, and other relief deemed just. By stipulation, the parties then removed from the court's calendar, without prejudice, Werner's motion to dismiss the original complaint.

Werner's counsel informed CRST's counsel that it considered Count V, the misappropriation of trade secrets claim, to be brought in bad faith and would seek attorneys' fees were it not dismissed. CRST's attorneys replied without further elaboration that they would dismiss the claim if Werner gave CRST a "release." Werner refused and filed a new motion to dismiss the entire FAC under Rule 12(b)(6). CRST then filed a memorandum opposing the motion to dismiss, in which it conceded it was prepared to dismiss the misappropriation of trade secrets claim.

The district court held a hearing at which it orally ruled to dismiss the FAC in its entirety, with prejudice, without providing reasons for its ruling. The court later entered a written order that also failed to state any reason for the dismissal. CRST filed a timely notice of appeal of the order of dismissal.

Werner then filed a motion for attorneys' fees in the

---

[3]A party may amend a pleading once as a matter of course before a responsive pleading is served. Fed. R. Civ. P. 15(a). A Rule 12(b)(6) motion to dismiss is not such a responsive pleading as to cut off a plaintiff's right to amend once, without leave of court. *See Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1130 n.3 (9th Cir. 2000).

amount of $55,655 on the basis that CRST's claim for misappropriation of trade secrets was specious and brought in bad faith. The court granted attorneys' fees, but only in the amount of $8,750. CRST filed a timely notice of appeal of the attorney fee order. CRST's two appeals were consolidated. CRST appeals the district court's dismissal of Counts I (intentional interference with contract), III (violation of the UCL), and IV (interference with prospective economic advantage), and its grant of attorneys' fees.[4]

## II.    Standard of Review and Choice of Law

We review the district court's Rule 12(b)(6) dismissal of CRST's claims *de novo. McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). We review the district court's grant of attorneys' fees for an abuse of discretion. *United States v. Stone Container Corp.*, 196 F.3d 1066, 1068 (9th Cir. 1999).

Werner did not move to transfer the action to an Iowa court, nor did it invoke Iowa law in reliance on the Iowa forum selection clause in Chatman's contract. Rather, both parties relied on California law in contesting the motion to

---

[4]Each party submitted a Federal Rule of Appellate Procedure 28(j) letter of supplemental authority. A number of related documents also were filed. CRST filed a Rule 28(j) letter, to which Werner responded by filing a "motion to strike." Werner filed a Rule 28(j) letter, to which CRST responded by filing a two-page response letter. Werner then filed a "motion to strike" CRST's response letter as overlong.

Rule 28(j) requires that "[a]ny response" to a letter bringing supplemental authority to the attention of the court is subject to a limit of 350 words. Ninth Circuit Rule 28-6 provides an alternate page limit of two pages for responses. Werner's two "motion to strike" filings were, respectively, a response to a letter bringing supplemental authority to the attention of the court, and a response to CRST's response. Neither of Werner's filings satisfied either the limitations in Federal Rule of Appellate Procedure 28(j) or the limitations in Ninth Circuit Rule 28-6. Werner's overlong responses are stricken.

dismiss. Werner is correct that because CRST did not raise the issue of Iowa law in the court below it may not do so on appeal. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (citing *Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n*, 218 F.3d 1085, 1089 (9th Cir. 2000)).

## III.    Intentional Interference with Contract (Count I)

[1] In Count I, CRST alleged Werner intentionally interfered with CRST's employment contracts. California provides a cause of action against a defendant who interferes with a contract between the plaintiff and a third party. As the California Supreme Court has stated:

> The courts provide a damage remedy against third party conduct intended to disrupt an existing contract precisely because the exchange of promises resulting in such a formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement.

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995). The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).[5]

[2] CRST adequately alleged each of these five elements required for intentional interference with contract. First, CRST alleged the existence of the Spencer employment con-

---

[5]In *Della Penna*, the California Supreme Court used the term "third party" to refer to the defendant, while in *Quelimane* it used that term to refer to the party with whom the plaintiff contracts.

tract and the first Chatman employment contract and incorporated the contracts by reference and attachment to the FAC. Second, CRST alleged Werner had knowledge of these contracts. Third, CRST alleged Werner intentionally induced breach of these contracts. Fourth, CRST alleged the employment contracts were breached. Fifth, CRST alleged resulting damage in the form of expended, unreimbursed, and hence, lost training costs, and recruiting and advertising costs.

**[3]** If CRST's employment contract provided for "at-will" employment of Spencer and Chatman when Werner allegedly induced them to leave their posts, there would be an additional requirement that CRST allege an *independently wrongful act* by Werner. *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004). Here, no independently wrongful act was alleged. However, as will be seen, the employment contract alleged does not create an at-will employment relationship during the first year of employment, the period when it was allegedly the subject of Werner's interference and consequent breach. Hence, CRST is under no obligation to meet the additional requirement of alleging an independently wrongful act beyond the alleged solicitation of Spencer and Chatman.

**[4]** CRST's employment contract provides that the term of employment is one year, after which the employment may be terminated at will by either party. However, the alleged contract further provides that if, within that one year, an employee breaches the contract or is terminated for due cause, $3600 immediately becomes due and payable by such employee to CRST. If, on the other hand, CRST terminates the employee without due cause, the employee is under no obligation to pay the $3600. Thus, the parties have limited their freedom to walk away from the employment with no consequences—the essence of an at-will contract. During that first year, the employer cannot fire the employee without due cause unless it is willing to forego reimbursement of $3600. Similarly, the employee cannot walk off the job without paying CRST the $3600. Werner argues that, under California

law, the only non-at-will employment contracts that employee and employer may reach are those contained in Cal. Lab. Code § 2924, which provides:

> An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it.

Werner is incorrect. Section 2924 provides specific means by which any employer "may" terminate an employee whose employment contract contains a specified term. It does not limit what contract terms can create an employment relationship other than "at-will." To answer that question, we look to *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317 (2000), which provides that, in fashioning an alternative to at-will employment, contracting parties may provide for "*any*" contrary understanding limiting the employer's termination rights:

> While the statutory presumption of at-will employment is strong, it is subject to several limitations. . . . [T]hough Labor Code section 2922 prevails where the employer and employee have reached no other understanding, it does not overcome their "fundamental . . . freedom of contract" to depart from at-will employment. . . . The parties may reach *any* contrary understanding, otherwise lawful, concerning either the term of employment or the *grounds or manner* of termination.

*Id.* at 335-36 (citations omitted) (internal quotation marks omitted). Nor are we persuaded by Werner's attempt to shoehorn its argument into the term "otherwise lawful" as used in *Guz*. If the California Supreme Court had intended that limits on an employer's termination rights other than those provided in § 2924 were unlawful, we believe it would have said so

plainly, rather than using the broad language present in the *Guz* opinion.[6]

[5] We find that CRST's employment contract provides for employment of a specified term, during which the employer's termination rights are limited. As such, the employment contract does not provide for at-will employment during the first year. *See* Cal. Lab. Code § 2922; *Guz*, 24 Cal. 4th at 335-36; *Reeves*, 33 Cal. 4th at 1152-53. Having found all elements of interference with contract to be adequately alleged, we conclude that the district court must be reversed on its dismissal of Count I.

## IV.  The UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* (Count III)

[6] CRST's third cause of action[7] alleges that Werner has violated the UCL and seeks an order requiring Werner to cease and desist from "stealing" CRST employees and requiring Werner to terminate employees wrongfully solicited. The UCL provides a cause of action for parties injured by any "unlawful, unfair or fraudulent business act or practice" to seek injunctive relief. Cal. Bus. & Prof. Code §§ 17200, 17203, 17204. The California Supreme Court has given the term "unlawful" a straightforward and broad interpretation:

---

[6]Our own statement to the contrary in *Nuelsen v. Sorensen*, 293 F.2d 454, 461 (9th Cir. 1961), does not control over the California Supreme Court's more recent statement in *Guz*. "[A] State's highest court is the final judicial arbiter of the meaning of state statutes . . . ." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975). When sitting in diversity, we are bound by our previous interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the previous] interpretation was incorrect." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 903 (9th Cir. 2000) (citation and internal quotation marks omitted).

[7]CRST does not appeal the district court's dismissal of Count II, negligent interference with contract.

The UCL covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is forbidden by law. . . . Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices.

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)) (internal quotation marks omitted).[8]

[7] We conclude that CRST adequately alleged that Werner violated the UCL because CRST adequately alleged that Werner engaged in an "unlawful" business act or practice that allegedly harmed CRST, namely, intentional interference with CRST's employment contracts. *See id.*; *supra* Part III. First, CRST's allegation of intentional interference by a corporate competitor with the employment contracts CRST had with two of its drivers clearly alleges a business act or practice. *Korea Supply*, 29 Cal. 4th at 1143.[9] Second, intentional interference with contract is a tortious violation of duties imposed by law. *Id.*; *Quelimane*, 19 Cal. 4th at 55-56. We need go no further to conclude that the district court must be reversed on its dismissal of Count III. We conclude CRST adequately alleged a violation by Werner of the UCL by alleging Werner

---

[8]The California Supreme Court has held that the word "unfair" in the UCL means conduct that threatens an incipient violation of antitrust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition. *Cel-Tech*, 20 Cal. 4th at 187.

[9]CRST's complaint contained the assertion that Werner's hiring of Chatman and Spencer were but two examples of an ongoing course of conduct. The allegations of interference with the Spencer and Chatman contracts are sufficient to establish a business act or practice under the UCL. A business act or practice need not be an ongoing pattern of conduct. *See United Farm Workers of America, AFL-CIO v. Dutra Farms*, 83 Cal. App. 4th 1146, 1163 (2000) (discussing 1992 legislative expansions to the UCL's definition of qualifying conduct).

engaged in an "unlawful" business practice, to wit, intentional interference with existing contracts of employment.[10]

## V.    Interference with Prospective Economic Advantage (Count IV)

**[8]** The elements of interference with prospective economic advantage resemble those of intentional interference with contract. They are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply*, 29 Cal. 4th at 1153 (citation and internal quotation marks omitted); *compare supra* Part III (discussing elements of intentional interference with contract).

**[9]** The primary difference between the two torts is that, unlike intentional interference with existing contractual relations, interference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself. *Della Penna*, 11 Cal. 4th at 392-93. In *Della Penna*, the California Supreme Court upheld a jury instruction requiring a "wrongful" act in a suit by an auto wholesaler who had been blacklisted by an auto manufacturer for exporting vehicles and who sued the manufacturer for interfering with his economic relationships with dealers. The Court of Appeal had reversed the judgment entered upon a defense verdict, finding instructional error in a requirement the manufacturer's act be wrongful. *Id.* at 378, 380. Reversing the Court of Appeal, the California Supreme Court emphasized the difference between interference with an existing contract and interference with prospective economic relations:

---

[10]We need not, and do not, decide whether CRST adequately alleged that Werner has engaged in an "unfair" business practice.

> Our courts should, in short, firmly distinguish the two kinds of business contexts, bringing a greater solicitude to those relationships that have ripened into agreements, while recognizing that relationships short of that subsist in a zone where the rewards and risks of competition are dominant.

*Id.* The Court held that the jury instruction, which required a finding of a wrongful act, was not erroneous because "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.' " *Id.* (quoting *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365, 1371 (1978)).

Our analysis in Part III, Intentional Interference with Contract (Count I), is applicable to the question of whether CRST properly alleged the elements of interference with prospective economic advantage. CRST's contracts with its employees created an "economic relationship" because this is how CRST claims it expected to recoup the costs of training those employees. Werner was allegedly aware of this relationship and allegedly performed acts intended to, and that did in fact, disrupt the economic relationship. Finally, CRST allegedly experienced harm from these acts. *See supra* Part III.

**[10]** The more difficult question is whether CRST has alleged an act, independently wrongful, to support its claim of interference with prospective economic advantage. *See Della Penna*, 11 Cal. 4th at 392-93. In *Korea Supply*, 29 Cal. 4th 1134, the California Supreme Court provided guidance as to what constitutes an independently wrongful act. There, a company representing a military equipment manufacturer sued its client's competitor for ruining the client's chances of winning a contract bid by improperly soliciting a potential customer with bribes and sexual favors. *Id.* at 1141-42. The complaint alleged conspiracy to interfere with prospective economic

advantage, intentional interference with prospective economic advantage, and violation of the UCL. *Id.* at 1142. The trial court sustained a general demurrer to the complaint on the basis the complaint did not state a cause of action under California law. *Id.* at 1142-43. The Court of Appeal reversed, holding the plaintiff did not need to plead that defendant acted with the specific intent to interfere with plaintiff's prospective economic advantage. *Id.* at 1143. The California Supreme Court affirmed this holding. *Id.* at 1156-57. It also held that the "independently wrongful act" requirement was satisfied by the acts of solicitation pleaded by plaintiff, which were unlawful under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2. Such acts were, therefore, "wrongful in and of themselves." *Id.* at 1159. The court stated: "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.*

Further guidance comes from a recent decision by the California Court of Appeal. *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215 (2006). There, a real estate broker sued its client's parent corporation and other parties when the parent corporation requested that ongoing negotiations for a lease agreement on behalf of the client be conducted instead by the broker's competitor. *Id.* at 1218-19. The broker claimed that the attempted insertion of its competitor into the broker's relationship with its client illegally interfered with its prospective economic advantage because such insertion was proscribed by industry trade rules and the UCL. *Id.* at 1220-21. The Superior Court granted defendant's motion for judgment on the pleadings without leave to amend. *Id.* at 1219. The Court of Appeal affirmed the grant of judgment on the pleadings, but held that the broker should be granted leave to amend the complaint. *Id.* at 1225-26. It held that the violation of trade rules was not independently actionable conduct and therefore, not an independently wrongful act, but ordered that plaintiff should be allowed to amend its pleading to allege that the trade rules

provided for a sanction or means of enforcement for a violation of the rules, such as a right of arbitration or some other remedy. *Id.* at 1223-24.

The court then addressed, "[f]or guidance of the parties," whether the alleged UCL violation could provide the requisite independently wrongful act. *Id.* at 1224. The court rejected the defendant's argument that the pleading of a UCL violation could not supply the requisite wrongful act because such pleading did not allege any conduct independent of the interference with prospective economic advantage:

> Respondents' motion for judgment on the pleadings argued that the Business and Professions Code section 17200 allegation was insufficient to meet the requirement of wrongful conduct because it did not allege any conduct independent of the interference. It appears respondents and the trial court misunderstood the nature of the independently wrongful conduct element. A plaintiff need not allege the interference and a second act independent of the interference. Instead, a plaintiff must plead and prove that the conduct alleged to constitute the interference was independently wrongful, i.e., unlawful for reasons other than that it interfered with a prospective economic advantage.

*Id.* at 1224 (citing *Della Penna*, 11 Cal. 4th at 379, 393; *Korea Supply*, 29 Cal. 4th at 1158-59, 1162); *see also id.* at 1224 n.3. Although the court entertained the idea that the pleading of a UCL violation *could* supply the requisite independently wrongful act, it ultimately concluded that plaintiff had not adequately alleged a UCL violation because plaintiff had not pleaded "unfair" conduct violating the spirit of antitrust laws. *Id.* at 1225.[11] Therefore, the court concluded, plain-

---

[11]Curiously, the Court of Appeal did not engage in a separate analysis of whether any conduct violated the UCL for the reason that conduct was "unlawful." Its inquiry was limited to the UCL's proscription of "unfair" conduct. *See id.*

tiff had not adequately pleaded a claim for interference with prospective economic advantage. *Id.* at 1225-26.

**[11]** Applying the principles stated in *Korea Supply* and *Stevenson Real Estate*, we conclude that CRST need not allege acts by Werner different from the alleged solicitation of Chatman and Spencer to allege a wrongful act giving rise to a claim for interference with prospective economic advantage.[12] CRST merely must allege that Werner's acts were unlawful for a reason other than that they interfered with CRST's prospective economic advantage. We have already concluded in Part IV that CRST validly alleged that Werner's acts violated the UCL, which the Court of Appeal considered as a predicate for an independently wrongful act in *Stevenson Real Estate*. Thus, CRST has adequately alleged that Werner's acts were unlawful for a reason other than that those acts interfered with CRST's prospective economic advantage. As a result, and because CRST has otherwise adequately alleged the elements of interference with prospective economic advantage, the district court must be reversed on its dismissal of Count IV.

**[12]** We are aware that our reasoning works a practical merger of the two common law torts of intentional interference with existing contract and intentional interference with prospective economic relations, where the two are alleged to coexist along with a contemporaneous and derivative UCL violation. This might appear contrary to the careful distinction drawn between the two torts by the California Supreme Court

---

[12]The relevant portions of *Stevenson Real Estate* were dicta "[f]or guidance of the parties." 138 Cal. App. 4th at 1224. We are aware of the problems with relying on dicta in judicial opinions. *See generally Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta*, 81 NYU L. Rev. 1249 (2006). However, as a federal court sitting in diversity, we are generally bound by the dicta of state courts. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1141 (9th Cir. 2003) (citing *Rocky Mountain Fire & Cas. Co. v. Dairyland Ins. Co.*, 452 F.2d 603, 603-04 (9th Cir. 1971)).

in *Della Penna*, 11 Cal. 4th 376. But *Della Penna* did not involve (1) allegations of contract interference coexisting with interference with prospective economic relations, nor (2) the effect that invocation of the UCL would have if there were allegations that both torts were simultaneously inflicted, along with a contemporaneous UCL violation dependent on one of the torts. We see nothing inconsistent with *Della Penna* in recognizing that the requirement of an independently wrongful act under the California law of intentional interference with prospective economic relations may be satisfied even by an alleged violation of a borrowing statute like the UCL.

True, our conclusion allows the allegations of interference with existing contract do triple duty: first as a basis for tort, then as a basis for a statutory violation, then again as the basis for another tort *because* of the allegation of a statutory violation, *because* of the tort first alleged. The reason for California's requirement of an act that is independently wrongful to establish intentional interference with prospective economic advantage is the California Supreme Court's decision to allow greater liberty of competitive forces where no contract yet exists with which to be interfered. *Id.* at 392. But not *all* competitive forces are licit. What is "unlawful" competition per the UCL, is illicit. Hence, even though the act that constitutes the violation of tort duties—the alleged solicitation of Chatman and Spencer—is the same, it also violates the law, to wit, the UCL, independent of those tort duties.

## VI.   Attorneys' Fees

**[13]** CRST objects to the district court's imposition of attorneys' fees for its filing of Count V, alleging misappropriation of trade secrets. Cal. Civ. Code § 3426.4 (2004) provides in part:

> If a claim of misappropriation is made in bad faith,
> a motion to terminate an injunction is made or
> resisted in bad faith, or willful and malicious misap-

propriation exists, the court may award reasonable attorney's fees to the prevailing party.[13]

The California Court of Appeal has interpreted the statute's "bad faith" element to require "objective speciousness of the plaintiff's claim . . . and its subjective bad faith in bringing or maintaining the claim." *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (2002).

[14] As a preliminary matter, we conclude that § 3426.4 properly was applied by the district court under the rule of *Erie v. Tompkins*, 304 U.S. 64 (1938), which requires federal courts sitting in diversity to apply state substantive law and federal procedural law. We have held that when state statutes authorize fee awards to litigants in a particular class of cases, the statutes are substantive for *Erie* purposes if there is no "direct collision" with the Federal Rules. *See, e.g.*, *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999) (concluding that California anti-SLAPP statute's provision allowing attorneys' fees to party successfully striking suit under statute could be applied in diversity cases); *Helfand v. Gerson*, 105 F.3d 530, 536-39 (9th Cir. 1997) (applying Hawaii statute authorizing attorneys' fees to prevailing party in actions "in nature of assumpsit"); *Price v. Seydel*, 961 F.2d 1470, 1475 (9th Cir. 1992) (applying Oregon law allowing attorneys' fees to prevailing party in actions enforcing contracts because law was "connected to the substance of the case"). Here, § 3426.4 applies only in cases where a trade secret misappropriation claim was filed. The statute does not supplant or collide directly with any Federal Rule, *see Newsham*, 190 F.3d at 972-73, and it embodies a substantive state policy against the frivolous filing

---

[13]The statute was amended in 2006, subsequent to the district court proceedings in this case, to permit the award of "costs" as well as attorneys' fees. An Act to amend Section 3426.4 of the Civil Code, relating to trade secrets, 2006 Cal. Legis. Serv. 1077-78 (S.B. 1636) (West).

of trade secret claims, *see Gemini*, 95 Cal. App. 4th at 1262. The district court could, consistent with *Erie*, apply § 3426.4 to sanction CRST for its filing of a trade secret appropriation claim in bad faith.

We now apply § 3426.4 and the California Court of Appeal interpretation of that statute to the facts of this case. We conclude that the district court did not abuse its discretion in awarding attorneys' fees to Werner. In *Gemini*, an aluminum company sued its subcontractor for interference with prospective economic advantage and misappropriation of trade secrets after the subcontractor solicited a common customer of the two companies. 95 Cal. App. 4th at 1253-54. The jury rejected these claims and additionally found that plaintiff acted in bad faith in its claim for misappropriation of trade secrets. *Id.* at 1255. The trial court awarded $160,200 in attorneys' fees. *Id.* The California Court of Appeal affirmed this award, holding that in enacting § 3426.4, "the Legislature was concerned with curbing 'specious' actions for misappropriation of trade secrets, and such actions may superficially appear to have merit." *Id.* at 1262. The court held the claim was objectively specious because the trade secrets alleged to have been stolen had no economic value, and held subjective bad faith was present because defense counsel had pointed out these shortcomings, with no response from the plaintiff. *Id.* at 1263-64.

**[15]** Here, the order granting attorneys' fees is correct that "CRST failed to demonstrate the required use of disclosure of trade secrets by Werner and the written contracts attached as exhibits to the FAC reflected the absence of any trade secrets as a matter of law *vis-a-vi* [sic] truck driving schools or truck driving." Perhaps CRST recognized the deficiency because it ultimately agreed to abandon the claim, but not before Werner threatened it with attorneys' fees under § 3426.4, or before Werner had filed a motion to dismiss arguing the merits of the claim. While there is no proof that CRST's purported trade secrets are worthless, there is also no proof in the record that

they are worth anything. This supports the conclusion that CRST's claim was objectively specious. The district court could infer subjective bad faith because defense counsel warned the plaintiff the claims were specious but CRST first haggled for a release and then, when unsuccessful, agreed to abandon the claim after Werner filed its motion to dismiss. *See Gemini*, 95 Cal. App. 4th at 1263-64. On the deferential standard of review we apply to the district court's decision to sanction CRST, we cannot say that the district court abused its discretion in awarding attorneys' fees to Werner.[14] We affirm the district court on this ground.

## VII.    Conclusion

We emphasize the circumscribed reach of our holdings. Our starting point is that CRST adequately alleged a violation of intentional interference with contract. Under the California Supreme Court's interpretation of the UCL, an adequate claim for relief from a tortious business act or practice effects a violation of the UCL because the UCL is a "borrowing" statute; hence, CRST adequately alleged a violation of the UCL. It "borrows" a common law "wrong" to constitute a statutory "unlawful" business practice. In turn, having adequately alleged a violation of the UCL, CRST has adequately alleged that Werner's acts were independently wrongful so as to support a claim for intentional interference with prospective economic advantage.

---

[14]CRST argues that the district court's procedure of entering an order drafted by Werner's counsel, without letting CRST review the order, warrants reversal. Although the district court did not provide CRST an opportunity to review the final order for attorneys' fees before filing it, we may affirm the district court on any basis present in the record, and do not reach this claim by CRST. *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089 (9th Cir. 2003). We do not consider CRST's argument, raised for the first time in its reply brief, that the district court violated its Local Rules. *See Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003).

Finally, we express no opinion on the merits of CRST's claims. We reverse the district court's dismissal of Claims I, III, and IV of CRST's FAC. We affirm the district court's grant of attorneys' fees to Werner. This matter is remanded to the district court.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**