In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3131

JOHN GACEK,

*Plaintiff-Appellant*,

*v.*

AMERICAN AIRLINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3968—**Suzanne B. Conlon**, *Judge*.

ARGUED JUNE 9, 2010—DECIDED JULY 15, 2010

Before POSNER, WOOD, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*.  A former baggage handler for American Airlines filed this diversity suit against the airline for retaliatory discharge in violation of the Illinois Workers' Compensation Act, 820 ILCS 305/4(h). The district court granted summary judgment for the airline, precipitating this appeal, which involves the applicability of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), to a suit based on state law but litigated in federal court.

The plaintiff sprained the middle finger of his left hand at work on December 22, 2005, while lifting a bag, and a doctor at the airport's medical clinic told him to wear a splint on the finger and do only light work until he recovered. Later another doctor at the clinic told him not to lift anything with his left hand. He called in sick on December 29 and an airline "attendance manager" phoned him to find out what was wrong. He didn't answer or return the call, though she had left a message. Her supervisor began harboring suspicions of the plaintiff because it was the holiday season (when workers are tempted not to work), and so the airline hired a detective agency to check up on him. He called in sick the following two days as well, and on the second day was videotaped by a detective. The videotape showed the plaintiff running errands over a three-hour period, lifting and carrying grocery bags with both hands, and not wearing the splint. Later—but before learning about the surveillance— the plaintiff told the airline that he had been absent on December 29 through 31 because of the flu. Later still he said he hadn't had the flu but had stayed off work because his finger was bothering him—a claim in tension with his having been observed lifting and carrying groceries with both hands and not wearing his splint. So he was fired.

He didn't file a workers' compensation claim till years later. But when he had first reported the injury a claim file had been opened by the airline's administrator of workers' claims; and a discharge motivated by such an injury report is a retaliatory discharge under Illinois

workers' compensation law. *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909, 913 (Ill. 1988).

It seems unlikely that an airline would fire a baggage handler merely because he sprained a finger and might seek workers' compensation, since worse injuries to baggage handlers are common. See Sahika Vatan Korkmaz et al., "Baggage Handling in an Airplane Cargo Hold: An Ergonomic Intervention Study," 36 *Int'l J. Indus. Ergonomics* 301 (2006); Geoff Dell, "The Causes and Prevention of Baggage Handler Back Injuries: A Survey of Airline Safety Professionals," *Safety Science Monitor*, http://ssmon.chb.kth.se/vol1/v1i3art3.pdf (visited June 21, 2010). But plausible or not, no reasonable jury could find that the airline had fired the plaintiff because its claims administrator had opened a file on the injury rather than because it believed that he had lied about having the flu and had disobeyed the doctor's orders to wear a splint on the injured finger and not lift anything with that hand.

We should consider whether this conclusion might be altered by whether the framework for deciding an employer's motion for summary judgment in a retaliatory-discharge case governed by Illinois law is supplied by federal law, which is to say by *McDonnell Douglas*, or by state law. The question has arisen repeatedly in this circuit, see *McCoy v. Maytag Corp.*, 495 F.3d 515, 521-22 (7th Cir. 2007); *Carter v. Tennant Co.*, 383 F.3d 673, 677-78 (7th Cir. 2004); *Borcky v. Maytag Corp.*, 248 F.3d 691, 696 n. 5 (7th Cir. 2001); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 473-77 (7th Cir. 2000) (concurring opinion), but we have ducked it be-

cause the lawyers ignored it or the answer would not have changed the outcome. It is time we answered the question. It is hard on the district judges for the court of appeals to allow a conflict in the rules that govern summary judgment to persist. It requires them to choose between the rules (when they would yield opposing results) without guidance, or, as a matter of prudence, to apply both rules in every case and hope the outcome will be the same under both. So let us choose.

In *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 407-08 (Ill. 1998), the Supreme Court of Illinois rejected the *McDonnell Douglas* framework for cases of retaliatory discharge for making a workers' compensation claim. Cf. *Jordan v. Clay's Rest Home, Inc.*, 483 S.E.2d 203, 207 (Va. 1997). It did so because it was unwilling to "expand the tort of retaliatory discharge by reducing plaintiff's burden of proving the elements of the tort," one of which is that the workers' compensation claim (or potential claim) was the cause of the plaintiff's being fired. 704 N.E.2d at 408.

In *McEwen v. Delta Airlines, Inc.*, 919 F.2d 58 (7th Cir. 1990), another diversity case, we had held years earlier that if the rule in Illinois was, as the plaintiff argued in that case, that a plaintiff in a retaliatory-discharge case could defeat summary judgment however weak his prima facie case, nevertheless the *McDonnell Douglas* rule would govern. The employer in *McEwen* presented evidence of a lawful reason for the discharge, and the plaintiff did not rebut it. That defeated her case under *McDonnell Douglas*. But it would have done so under

Illinois procedural law as well, since the evidence, uncontradicted as we said, precluded an inference of retaliation. We know from the *Clemons* decision, decided after *McEwen*, that the Illinois rule is not as was argued to us in *McEwen*. More important, the passage we quoted from *Clemons* makes clear that the rule adopted in that case (rejecting *McDonnell Douglas*) is grounded in substantive rather than procedural principles—in a desire as we said to assimilate retaliatory discharge to other torts. And so in the post-*Clemons* case of *McCoy v. Maytag Corp.*, *supra*, 495 F.3d at 522, we treated the applicability of *McDonnell Douglas* to diversity cases governed by the Illinois law of retaliatory discharge as open. ("We leave the decision regarding '"what the *prima facie* case of retaliation is in the Seventh Circuit"' for another day." *Id*.)

*Snead v. Metropolitan Property Ins. & Casualty Co.*, 237 F.3d 1080 (9th Cir. 2001), is similar to *McCoy*. Although the court discussed at length the applicability of the *McDonnell Douglas* test to a case governed by Oregon law, it was for the purpose of showing that, since the application of *McDonnell Douglas* yielded the same result that applying Oregon's test would have done, there could be no objection to applying the federal rule. See *id*. at 1090-94. Unanswered was the question whether, if a state adopts a procedural rule that differs from the federal procedural rule, and does so for reasons of substantive policy (in the present case, to bring about uniformity in proving tort cases), the federal courts are required to apply the state rule in a case gov-

erned by state substantive law if applying the state rule rather than the federal one might alter the outcome of the litigation.

Suppose *McDonnell Douglas* were applicable to this case; then a worker who had filed a workers' compensation claim, and who had proved that his work was otherwise satisfactory and that he (and no worker who didn't file such a claim) was fired, would be entitled to summary judgment unless the employer advanced a reason for having fired him that the worker could not show was merely a pretext. *Borcky v. Maytag Corp., supra*, 248 F.3d at 697 n. 6; *Bourbon v. Kmart Corp., supra*, 223 F.3d at 473. The plaintiff would thus have won without ever directly confronting the question whether his filing a workers' compensation claim was the cause of his being fired, even though such a showing would be necessary in any other tort case.

The concurring opinion in *Bourbon v. Kmart Corp., supra*, 223 F.3d at 475-77, pointed out that some cases of retaliatory discharge have required proof of causation while purporting to apply the *McDonnell Douglas* framework. See also *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 642-44 (7th Cir. 2002). We can put that complication to one side, though it helps explain why the choice of standards will rarely affect the outcome of a case. We know that Illinois requires proof of causation, and that can make a difference. For suppose that in a case governed by *McDonnell Douglas* the employer fails to offer any reason for having fired the plaintiff. An inference would arise that the reason was the unlawful

one alleged by the plaintiff. Yet in some cases the reason might be unknown to the employer (the actual firing having been done by a subordinate who may have left the company or be unwilling to cooperate in its investigation) or the employer might be unwilling to reveal the real reason because it would disclose an illegal or unethical or otherwise embarrassing practice (nepotism, for example, or blackmail) though one unrelated to the discrimination alleged in the suit. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997). Then the plaintiff would win under *McDonnell Douglas* without more, but under the Illinois rule he would have to prove that the alleged discrimination was the cause of his being fired. So the choice between the federal *McDonnell Douglas* approach and the state *Clemons* approach may make a difference in at least some cases governed by Illinois law, and it is a difference that will favor plaintiffs if *McDonnell Douglas* is applied in preference to *Clemons*.

Under the *Erie* doctrine, federal courts in diversity cases (and any other cases in which state law supplies the rule of decision) apply state "substantive" law but federal "procedural" law. E.g., *Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996); *Mayer v. Gary Partners & Co.*, 29 F.3d 330 (7th Cir. 1994); *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002). A substantive law is one motivated by a desire to influence conduct outside the litigation process, such as a desire to deter accidents, while a procedural law is one motivated by a desire to reduce the cost or increase the accuracy of the litigation process, regardless of the substantive basis of the

particular litigation. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 537 (7th Cir. 2007); *Barron v. Ford Motor Co.*, 965 F.2d 195, 199 (7th Cir. 1992); *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 882-83 (10th Cir. 2006). If an ostensibly procedural rule of state law is confined to a particular substantive area of law, this suggests that it probably was motivated by substantive concerns and therefore should be applied by the federal court in a case governed by state law. *Bourbon v. Kmart Corp.*, *supra*, 223 F.3d at 475 (concurring opinion); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1123 (7th Cir. 1998); *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995), and cases cited there; *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539-41 (10th Cir. 1996).

*McDonnell Douglas*, unlike the rule that places the burden of proving an affirmative defense on the defendant, is not a general rule of procedure, applied regardless of the nature of the case. Initially it was limited to cases of employment discrimination (which includes retaliatory discharge, since employment discrimination just means basing an employment decision on an unlawful ground), though it has since been adapted for use in other types of discrimination case as well. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 829-30 (7th Cir. 2007) (racial discrimination against a franchisee); *Kormoczy v. Secretary of HUD*, 53 F.3d 821, 823-24 (7th Cir. 1995) (housing discrimination based on family status); *Lindsay v. Yates*, 498 F.3d 434, 438-39 (6th Cir. 2007) (racial discrimination in housing); *Lindsey v. SLT Los Angeles, LLC*, 447

F.3d 1138, 1144-45 (9th Cir. 2006) (refusal, on racial grounds, to enter into a contract); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-73 (6th Cir. 2001) (racial discrimination in treatment of a customer); *Mercado-Garcia v. Ponce Federal Bank*, 979 F.2d 890, 893 (1st Cir. 1992) (racially motivated denial of credit). It's designed to make it easier for plaintiffs to withstand summary judgment in discrimination cases, in the belief that "a discrimination suit (unlike, for instance, an action for negligence or breach of contract), puts the plaintiff in the difficult position of having to prove the state of mind of the person making the employment decision. Furthermore, unlike some other torts, in which state of mind can be inferred from the doing of the forbidden act, the employer's state of mind cannot be inferred solely from the fact of the adverse employment action . . . . To make matters somewhat easier for plaintiffs in employment discrimination suits, the Supreme Court, in *McDonnell Douglas Corp. v. Green*, developed a presumption that supplemented—but did not replace—the traditional framework." *Wright v. Southland Corp.*, 187 F.3d 1287, 1289-90 (11th Cir. 1999) (citations and footnote omitted); see also *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983); *Stone v. City of Indianapolis Public Utilities Division*, *supra*, 281 F.3d at 643; *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995); *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997).

Illinois, however, doesn't want to give plaintiffs in retaliatory discharge cases governed by state law that leg up; it doesn't want to modify the conventional princi-

ples of tort law. That is a substantive judgment, one that a state is free to make in areas governed by state law, whether we think it wise or unwise. In most cases of employment discrimination the state and federal standards for summary judgment will be materially the same and the federal judges' greater familiarity with the *McDonnell Douglas* doctrine will provide a compelling reason to apply it. But when a retaliatory discharge case governed by Illinois law is litigated in a federal court, the federal court must apply the standard of the state law to a motion for summary judgment, and not the federal standard, because the standards are materially different and the difference is rooted in a substantive policy of the state.

We are confirmed in this conclusion by the Supreme Court's very recent decision in *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009). The question was whether the rule of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), shifting the burden of proving causation in Title VII cases from plaintiff to defendant, should also govern cases under the Age Discrimination in Employment Act. The Supreme Court in *Gross* said no, thus treating the burden-shifting rule not as a substantively neutral rule of procedure but as a rule limited to a particular statute, in that case Title VII. *McDonnell Douglas* has a broader domain of applicability, at least as understood by the lower federal courts, but still a domain defined by a substantive category, namely discrimination.

So the plaintiff in this case could not have prevailed merely by proving that the reasons given by the airline

for firing him were unworthy of belief; and in any event he presented no credible evidence that they were.

AFFIRMED.